Your Honor, for the record, my name is Palmer Huvestal. I'm an attorney from Helena, Montana, and I'm appearing on behalf of the appellant, Margaret Blixt. And the issue that I want to argue this morning is the legal issue of whether a forged signature is a name and therefore a means of identification under the aggravated identity theft statute. I'd like to use ten minutes and then reserve the remaining five for rebuttal. The indictment in this case charged two counts, and the first count was mail fraud. And in particular relevance in that count was the allegation that Mrs. Blixt forged the signature of her supervisor, Timothy Fitzpatrick. Count two charged a violation of the aggravated identity theft statute. And in essence, it charged the use of the name Timothy Fitzpatrick in conjunction with the mail theft charge. The aggravated identity theft statute is in essence a sentencing enhancement statute which enhances a mandatory two years on top of the underlying substantive offense. But it states that the transfer, possession, or use of a means of identification is basically aggravated identity theft. And then the definition of a means of identification includes, among other things, name. And so looking at the allegations of the indictment, we filed a 12B6 motion to dismiss, count two, for the reason that a forged signature is not a means of identification under the statute. What about a signature period? Is that, can that be technically considered a means of identification? Your Honor, I think that there's two aspects of it. And the first aspect is a legal aspect, and the second aspect is a factual aspect. And so from a legal point of view, a signature maybe can or it maybe can't. And to illustrate the point, I would, I don't know if you have an excerpt of record there, but if you look at the district court's order, which is excerpts of record number four, on page six we have the signature of the district judge in this case, Charles C. Lovell. And it appears to me that this is a signature that is, in essence, cut and paste from an original. In other words, the original was scanned into a computer and it was cut and paste. And the reason I say that is because the font seems to be different, it's darker, and it simply appears to me to be a scanned signature that was cut and paste. And in this instance, I think that under the law, under the definition of name, it very well could be. We have a signature that was clearly Judge Lovell's signature. We have a signature that was adopted by him. We have a signature that was authorized to be used by him. And it's used in this particular document. But more than that, the not-so-random curves and swirls, et cetera, that we all use, some of which is legible and some of which is not, is clearly intended as the identifying mark of a particular individual, right? Correct. Now, if someone forges that or attempts to usurp those random squiggles to themselves, aren't they, in essence, usurping another person's identification and means of identifying themselves? Well, I don't think so, at least not in this particular case. And the basis upon which I make that statement is by looking at the exhibits. And the exhibits, which are the specific checks, you simply cannot determine whose name or whose identity is on that particular check. All right. Now, let's assume that to be true. Matter of fact, I'm acquainted with one judge who says if you cannot distinguish the name, you can't read the name and tell that this is John Hancock, that that is not a signature. But be that as it may, let's assume that you can't make that out. You can't look at those squiggles and say, okay, that's John Hancock. But if those squiggles are done the same way by this person time and time again, checks and what have you, and that person intends for these squiggles to be his or her signature, isn't that all that's important, that that X is my mark and I intend for that mark to represent me and to show authorization for anything that a signature is intended to do? All right. So does it really matter whether or not you or I can make it out, make out that signature and be able to say, ah, that is John Hancock? Well, Your Honor, I think that it does. And the basis upon which I make that statement is the statutory definition of use or rather means of identification. I think that a signature is unlike a Social Security number, for example, where there are specific numbers that are assigned to a particular individual and then once assigned to that individual, it can never be reassigned to somebody else. And so therefore, they're, you know, inherently individual. An X, on the other hand, utilizing the, you know, the example in the reply brief can be adopted by Mary Moore or John Jones or whomever. And so the signature, I think, is different than a name. Its signature is different than a Social Security number or an online passport or anything. It's simply different. And for that reason, I think that as a matter of law, as a matter of law, the court erred in denying Mrs. Blick's 12b6 motion or 12b motion for the reason that he equated a signature as a or rather with a name under the aggravated identity theft statute. And I think as a matter of law, that was error. And I think that, as well, that error carried on into the rest of the case in that once the district court denied the motion, we submitted a trial brief telling the court that we intended to defend the case on the theory that a forged signature, which is inherently different than an actual signature. In other words, if Mrs. Blick had, as I referenced in, you know, the district judge's order, if she had taken a photocopy or a stamp of Timothy Fitzpatrick's actual signature and used it on these others, then that would have been, in my view, a use of a name. But that's not what occurred. Rather, she looked at the signature and did whatever she did to mimic those swirls and lines. But that's not the kind of identity or information or personal data as set forth in the legislative history that would identify that specific individual, Timothy Fitzpatrick. So it becomes an issue of how well you copy someone's signature. Yes. And that becomes a fact issue for a jury to decide. The government filed a motion in limine to prohibit the defense from asserting that defense. The district judge held the motion under advisement and ultimately, at the end of the government's case, denied the district judge's motion in limine, which in my view at least authorized that defense and allowed us to make that argument to the jury. Let me ask you a question, if I may, about the sentencing issue that is raised about whether the diminished capacity guideline was available. And specifically, I want your view on the question whether the guideline when it says that the court may not depart below the applicable range if the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. And they use a little c and a little h. So does criminal history in that guideline simply refer to the fact that the defendant has committed other criminal acts or is it a formal capital C, capital H, meaning category Roman III? Do you understand my question? Because in this case, she had no prior convictions, but she had committed other thefts. And so it has some relevance potentially. I think that as a matter of policy, if the sentencing commission had intended these other thefts, uncharged occurrences, unconvicted offenses to be utilized, they would have stated that in the application notes. There would have been some sort of statement to that effect. But if they had only indicated a formal criminal history, like a criminal history score, wouldn't they have also indicated that? Don't we just have an ambiguity? Certainly an ambiguity that exists here. But in my opinion, I think that if the sentencing commission had intended that, it would have been set forth in the application notes. If the district court had the authority to depart but didn't, what difference would it have made in this case? It seems to me relatively clear that the court would have imposed the same sentence regardless. And it's discretionary whether to utilize that departure anyway. So where is the possible prejudice to your client? Well, at the outset, we told the jury this. We told the district judge this when we settled jury instructions. The primary reason this case was taken to trial was because of the legal issue, that is, whether a signature is a name. And the reason we disagreed with that was so that the district judge could have regarded and taken into consideration the diminishmental capacity of Mrs. Blix due to, you know, the testimony of Dr. Stratford and exercised his discretion. Looking at what he termed to be her criminal history, he elected not to do that. I think that Judge Lovell very well could have, but for the criminal history issue, regarded that diminishmental capacity and departed downward because, as stated by Dr. Stratford during the sentencing hearing, she simply could not control her behavior. I mean, one of the terms and conditions of her pretrial release was that she not continue to gamble. And she gambled even after her conviction, which resulted in her revocation prior to her sentencing. Counsel, on a different note, do you think it's fair to say that you made a jury nullification argument? Absolutely not. I do this in virtually every case, and in particular this case, where the defense was a technical defense. And it's a Ninth Circuit jury instruction that is given in every trial virtually that jurors are to exercise careful and impartial consideration of the evidence when they decide the issue is a fact. And so in order to impart upon the jury the importance of careful and impartial consideration of the facts, especially when the conduct was admitted and the defense was a technical defense, that was the goal and the intention of making the closing argument that we did. Why would you bring in the Iraq war to call the jury's attention to its duty? What does that have to do with the jury giving careful attention to the facts? It had to do with the fact that this is the United States government prosecuting this case. So what? Well, it's the power of the government. The jury stands as a buffer between the government and the people. My gosh, you're getting ready to do that whole thing before this court, aren't you? You're getting ready to make those same absurd arguments, aren't you, about how the United States government has no business in prosecuting the violation of federal statutes, aren't you? This Court of Appeals? Guess what. Look around. You'll see no jurors here. That was absolutely despicable what you did to the trial judge. Well, your Honor, I thought... For the record, I thought that the trial judge handled it remarkably well. For you to stand there in front of that jury and tell that jury that this case had no business in federal court, that it ought to be across the street, for you to tell that jury that the trial judge was a presidential appointee and confirmed by the Senate, which I have absolutely no idea what you were seeking to accomplish with that. Maybe you can enlighten me. What did that have to do with anything in terms of the jury's duty to evaluate the evidence and make findings of fact? Well, your Honor, that was not my intention. You know what else? And what particularly disturbs me is that you raise these outrageous issues that have absolutely nothing to do with the jury's duty, requiring the trial judge then to deal with it, and you now have the audacity to raise these as issues on appeal. That is just absolutely despicable to me. Well, I apologize, but that was not my intent. My intent was to establish the importance of the careful and impartial consideration of the evidence instruction. Do you have a problem with the United States of America? Is that what it is? And you were hoping that, I don't know, that your distaste for this country could be imparted to the jury and that the jury would just simply nullify its instructions and says, listen, this poor woman is being prosecuted by the United States of America, and therefore we ought to throw it out of court. That was your intention, wasn't it? It was not my intention. Then please tell me what purpose that served. Again, it served the purpose of the importance of this matter in the life of Margaret Blitzt. But what was the reference to state court, that it should have been in state court? What did that have to do with the jury's duty? What difference did it make, whether it's prosecuted in state court or federal court, to the jury's duty? Not all criminal conduct constitutes a federal offense. And Russell Wickhom stated that this conduct constitutes the state crime of forgery. This conduct constitutes the state crime of theft. It constitutes the state crime of embezzlement. And if she admitted her conduct, and if she had been charged in state court, there would have been a guilty plea. The defense in this case was not that she didn't do it. The defense was that the conduct does not constitute a federal offense. I think we understand your position, and you have exceeded your time. So thank you, counsel. We'll next hear from the government. Good morning. My name is Mike Lahr, and this is the U.S. attorney in the Helena office of the U.S. Attorney's Office for the District of Montana. Could you start? Go ahead. I'm sorry? I thought the clock hadn't started. Oh, and I did prosecute this case. Instantly getting back to some of the things that have been already spoken about here, I think this panel recognizes the arguments that the appellant is making as far as the signature is the name. That, of course, is the ultimate issue. The defendant has used an analogy to talk about, for instance, a Social Security number, saying a Social Security number is something that's assigned to an individual. Somehow that's inviolate that if she had used a Social Security number, that, in fact, would be a form of identity theft. But when you're merely using the signature, that is not actually using the name. In fact, the signature that Timothy Fitzpatrick, her supervisor in this case, his signature was the one that was authorized as far as the bank was concerned on the checks. His signature was, in fact, assigned to him in that it is his unique signature. She forged that signature. She has not ever disputed or ever denied the fact that she forged that signature over and over and over again. Whether or not any other individual could look at that signature and recognize it as Timothy Fitzpatrick or not is pretty much irrelevant. She recognized it as Timothy Fitzpatrick's signature and as his name, and she used it as best as she could and admitted this. Her intent was to forge that particular signature. I think it's important that not only was that the authorized signature, but it was critical to her fraudulent design. In other words, not only did she have to use the name of Timothy Fitzpatrick to accomplish her crime, she had to use the name Timothy Fitzpatrick in that particular form. She had to use the signature form of his name because she was signing these checks. If she had used another name, it would not have been successful in terms of getting the payment. That's absolutely correct. In other words, and she has always admitted that that is what she was trying to do. Whether it was always a good forgery or not is also beside the point. She admitted on 352 checks she was trying to sign Timothy Fitzpatrick's signature as close as she could so that it would pass muster not only with the cashier but with the bank as well as it continued to go through. Just some quick points on some items that were brought up. This was, in fact, a legal issue decided by the court. This issue has not changed from the time the motion to dismiss count two was filed months before trial. The defendant, the appellant, has often suggested that there are factual issues here. That's why it needed to go to trial. I think the court allowed things in to see what sort of factual issues could come in to weigh in on this issue. But, in fact, the same issues exist now as existed at the time of trial that are being argued in this. But it is novel in that there is no case directly on point, refuting the point. That is absolutely correct. As this panel is probably aware, the Ninth Circuit is just getting some opportunities to first address this aggravated identity theft statute. There are some other circuits that have dealt with the mens rea aspect and whether you have to know the individual is an actual individual, whether you had to actually steal the identification as opposed to have it given it to you or purchased it. Those are all issues that will be coming down the pike for this court and others as far as the aggravated identity theft statute is concerned. This is novel, but as far as the government is concerned, a name includes a signature. And especially in the type of crime as this where the form of the name that had to be used was the signature. No other form of that name could have been utilized in this case. Could I ask you the same question I asked opposing counsel about the meaning of the guideline when it says criminal history that precludes application, even on a discretionary basis, of the diminished capacity reduction? Does that mean a formal criminal history that is convictions, or does that simply refer to the nature of the kinds of acts that this person has done that would make incarceration imperative? I believe, and I think you pointed out, is the sentencing guidelines have many provisions, particularly dealing with the determination of criminal history category, dealing with criminal history points, what count, what do not, how many years back, you can go, and so forth. I see in this subsection 3 of 5K2.13 is a reference, I think your terminology was absolutely correct, is sort of little c. In other words, what criminal history is out there that should indicate to me as the sentencing judge that this person remains a danger or could be a danger to the public, and that's what I have to look at. What if that is incorrect? Would it make any difference in this case in that the, to me, reading the sentencing transcript piece of this, it seemed pretty clear that he was saying that, well, regardless of whether I apply this or I don't, this is where I think you belong. Would any error be harmless in this case? I think that that is a correct conclusion that you've reached. I think Judge Lovell was very careful in his sentencing transcript to let counsel know, to let everyone know there were various issues in play. I think Judge Lovell was fairly specific that where he wanted to get to, what he thought was fair, and I believe that in this situation, that even had he determined that what he viewed as criminal history should not be used, in other words, he did have the discretion to depart for diminished capacity, I think the record as it exists indicates that he would not have departed below based on diminished capacity. And I think the other issue, of course, is that the aggravated is a mandatory minimum. That only would have had to deal with the kind of the top side, the guideline range aspects of her, as opposed to the two-year aggravated, which was a mandatory, which he would not have been able to go below. But I think with all of the issues, I think Judge Lovell was very careful, as he always is, to discuss the reasons for his sentencing. And I think that you're exactly correct in that he believed that 48 months was an appropriate level for her, and that would not have changed whether or not he had gone below. Whether or not he believed he had discretion under 5K2.13 or not. Just to address some final things that I think this panel is interested in, as far as the jury instructions were concerned. I think, first of all, when you look at the argument that the appellant has made that she was not entitled to have an instruction that went with her theory of the defense. Her theory of defense, I think essentially the appellant has forgotten that there are two halves to that. There has to be support for the theory in the evidence, but there has to be legal support for it. And clearly, Judge Lovell in this case determined that her legal argument, the signature was not a name, was incorrect. And once he had determined, made that determination, there was no support for this legal theory. And therefore, she certainly was not entitled to have a defense, even if she wanted it. As far as the materiality issues are concerned, I think the evidence was overwhelming there. I think the appellant has misconstrued the jury instruction that is the form instruction 8.101, which is the general mail fraud format instruction for the Ninth Circuit, the pattern instruction. To essentially add an additional element, he has utilized or she has utilized the definition of materiality, which is a reason for reliance that could lead one to part with money or property, and essentially has gone a step forward to say that's another element in the mail fraud. You always have to have the transfer of money or property in order to have a mail fraud. All one needs to do is to look at any of this court's case law, but even just looking at the remainder of that instruction to find out that that is not correct. In fact, that instruction clearly states that the fraud itself doesn't even have to be successful, number one. And number two, it also specifically says you do not need to have had a transfer of money or property. So looking at the entire instruction, the appellant's claim that the United States did not meet its burden or that the court's instructions were improper on the materiality just doesn't hold water. All the court was trying to do was to clarify, which it had every right to do for the jury, that there was not this additional element involved. And finally, as far as the concerns on whether or not this was a state offense, I think anyone looking at the record can see that the closing argument was designed, was very purposeful, was reciting the evidence, the testimony of the Helena police officer that was referred to as if that detective was stating that, in fact, this was a state crime, but perhaps was not a federal crime. I think that defendants' counsel very clearly tried to insinuate, if nothing else, without explaining the aspects of concurrent jurisdiction, without explaining that something could be a state crime and a federal crime, was very definitely pushing the jury to a point where it might conceive that this court, or that this court, meaning the federal court, this case, was not properly before that jury. I think those intentions were clear, and I think the judge, as has been stated, was very understated and controlled and very purposeful in how he addressed all of these issues with his instructions after closing arguments. It was a very level approach to it. He did not go overboard. There was no indication of bias. There was certainly no indication that he was no longer impartial, but I think the judge did what he had to do to respond to the statements that were made by counsel. In all, we would ask this panel to affirm all of the rulings of the court, to affirm the jury's verdict, and that this case stand as currently before it. Thank you, counsel. Mr. Hubestall, you used up your time, but we'll give you one minute for rebuttal. Again, with respect to the use of a name issue, I would urge the court to again look at the exhibits, and in particular government's exhibits that are set forth in the 13th appendix or excerpt of record. And importantly, nowhere in any of those checks does the name Timothy Fitzpatrick ever occur that can be read, and that's the reason why I began the brief with this court's called upon to decide what this is. And you just simply cannot state, nobody can state that this is Timothy Fitzpatrick's name. Your client intended it to be understood as Timothy Fitzpatrick's name, right? Well, his mark, his signature. Thank you, counsel. A novel argument.
judges: Graber, Rawlinson, Wright